# In the United States Court of Federal Claims

No. 22-1701 C

Filed: June 27, 2024

|  |  |
|---|---|
| MICHAEL FEINSOD, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| *Defendant*. | ) ) ) |

*Edward John Longosz, II*, Eckert, Seamans, Cherin & Mellott, LLC, Washington, D.C., with whom was *Darcy Osta*, for Plaintiff.

*Joshua David Tully*, U.S. Department of Justice, Civil Division, Washington, D.C., with whom was *Arlene Embrey*, counsel for the Small Business Administration, for the Defendant.

## ORDER

Michael Feinsod was an officer of a company that wound up in receivership in New York. Protracted litigation followed in the Eastern District of New York, which remains ongoing to this day. Feinsod believes that the district court litigation breaches a settlement agreement between the Small Business Administration and the former officers, including him. He sues here for monetary damages for that alleged breach.

The Government has moved to dismiss or stay this case until the New York action becomes final. Because the court agrees that the New York litigation will likely limit or resolve the issues before this court, and that litigation is far further along than this case, the court grants the government's motion insofar as it seeks to stay this action.

### I.   BACKGROUND

#### A.   ELK Associates.

ELK Associates Funding Corporation ("ELK") is a New York corporation that made loans to small businesses using a combination of private capital and money raised from the sale of debt instruments ("Debentures") to the Small Business Administration ("SBA"), an independent agency within the United States Government. ELK held a license as a Specialized Small Business Investment Company starting in 1980 and was organized as a perpetual-life corporation. When the SSBIC program ended, ELK was converted to an SBIC ("Small Business

Investment Company"), and the company continued operating under its existing license until 2012. To help support its operations, ELK received public funds from the SBA. *See Elk Assocs. Funding Corp. v. SBA*, 858 F. Supp. 2d 1, 5, 9-10 (D.D.C. 2012).

Michael Feinsod was a director and officer of ELK from June 2006 to July 2013. He was also President, CEO, Chairman of the Board, and Chief Compliance Officer of Ameritrans Capital Corporation ("AmeriTrans"), a corporation "formed to acquire ELK and own it as a wholly-owned subsidiary." ECF No. 10 ¶ 29; *see* Answer of Defendant Michael R. Feinsod to Amended Complaint, *SBA as Receiver of Elk Assocs. Funding Corp. v. Feinsod*, No. 2:17-cv-03586 (E.D.N.Y. Mar. 11, 2021), ECF No. 174 ¶ 11. "The primary business of Ameritrans, from its formation, was managing ELK." ECF No. 10 ¶ 32. AmeriTrans and ELK are organized as a single reporting company, having received all necessary approvals from SBA and Securities Exchange Commission ("SEC") in 1999.

### B.  The District of Columbia litigation and settlement agreement.

By March 2010, ELK had become underfunded. The company's private capital had deteriorated to the point that it no longer met the minimum regulatory threshold of capitalization[1] and triggered an event of default. *See Elk Assocs.*, 858 F. Supp. 2d at 5; ECF No. 10 ¶ 33. That July, SBA notified ELK of its default and directed the company to cure. ECF No. 10 ¶ 34. Despite some initial successful investment negotiations, subsequent attempts by ELK to secure funding from third-party investors fell through, and its capital impairment worsened. *See Elk Assocs.*, 858 F. Supp. 2d at 5. Feinsod asserts that within a month (by August 2010) ELK's capital impairment was in fact cured by a contribution of capital from Ameritrans. According to Feinsod, approval by SBA was required before any transaction involving a third-party equity investment in Ameritrans could be finalized, and after seven months of review, SBA refused the first two potential investments that would have cured ELK's capital impairment. ECF No. 10 ¶ 37.

The rationale behind SBA's two refusals was that the proposed transactions did not comply with SBA's Management-Ownership Diversity ("MOD regulations") requirement, contained in 13 C.F.R. § 107.150. The MOD regulations, aimed at preventing abuses SBA had observed, required all SBICs to have independence or "diversity" between the management and the ownership of the company.[2]

---

[1] The relevant regulatory threshold, defined in 13 C.F.R. § 107.1830(c)(2), is that each SBIC must maintain a ratio of accumulated losses to paid capital (its Capital Impairment Percentage, or "CIP") below 40 percent. ECF No. 10 ¶ 27. If an SBIC exceeds that ratio, then it has become Capitally Impaired, and the SBA then has the authority to demand compliance. 13 C.F.R. § 107.1830(b). If the SBIC fails to comply the SBA has the authority to refer the matter to the Office of Liquidation, a department of the SBA—to do so, SBA must provide notice and an opportunity to cure the impairment of at least 15 days. 13 C.F.R. § 107.1810(g).

[2] The original draft of the MOD regulations required at least 30% of the SBIC's capital to be owned by investors outside of and not in control of the SBIC's management team. Small Business Investment Companies, 63 Fed. Reg. 5859,02 (Feb. 5, 1998) (codified at 13 C.F.R. § 107.150). Three such "diversity investors" were required unless a single diversity investor met

In 2012, SBA referred ELK to the Office of SBA Liquidation, the office responsible for developing liquidation strategies and negotiating settlements.  *See Elk Assocs.*, 858 F. Supp. 2d at 16; ECF No. 10 ¶¶ 42, 69 n.11.  According to Feinsod, SBA referred ELK to liquidation to terminate the company's status as an SBIC.  When ELK threatened to sue, the SBA suspended liquidation activities and issued a second formal notice of capital impairment to ELK, giving the company fifteen days to cure.  *See Elk Assocs.*, 858 F. Supp. 2d at 5.

On March 20, 2012, ELK filed suit against the SBA and SBA Administrator Karen G. Mills, in the United States District Court for the District of Columbia, asserting claims under the Administrative Procedure Act ("APA").  *Elk Assocs. Funding Corp. v. U.S. Small Bus. Admin., et al.*, Case No. 12-cv-00438 (CKK) ("the APA Action").  In the APA Action, ELK alleged arbitrary and capricious conduct by the SBA in its efforts to remove ELK from the SBIC program.[3]  ELK sought a preliminary injunction and a temporary restraining order, both of which the court denied, holding that there was "no credible argument that the SBA's decision to transfer ELK to the Office of SBIC Liquidation was procedurally or substantively defective" and that "ELK ha[d] not carried its burden of establishing that it is likely to succeed on the merits." *See Elk Assocs.*, 858 F. Supp. 2d at 5, 23.  The district court noted that as of April 2012, ELK owed more than $21 million to the SBA.  *See Elk Assocs.*, 858 F.Supp.2d at 1.  SBA then moved for summary judgment, and the motion was held in abeyance to permit the parties to fully brief ELK's motion for leave to serve discovery on the SBA.  ECF No. 10 ¶¶ 47–49.  Then, before the district court ruled on the summary judgment motion, ELK and SBA entered into a settlement agreement and Mutual Release on October 31, 2012.  ECF No. 10-1.

The settlement agreement, entered by SBA in its capacity as "a federal agency," called for the voluntary surrender of ELK's SBIC license and payment by ELK of a lump sum of $7,900,000 to SBA by January 7, 2013.  ECF No. 10-1 ¶¶ 1-3.  Pursuant to the settlement agreement:

---

certain net worth and regulatory oversight requirements.  *Id.*  The MOD regulations were amended in 2000 to generally prohibit ownership of more than 70% of a leveraged SBIC by a single investor or group of affiliated investors.  Small Business Investment Companies, 65 Fed. Reg. 157,49511–13 (Aug. 14, 2000) (codified at 13 C.F.R. § 107).  But SBA recognized that some categories of SBIC, such as a "traditional investment company," could be permitted to own over 70% of SBIC without adversely affecting the SBIC's management-ownership diversity.  *See id.*; *see also Elk Assocs.*, 858 F. Supp. 2d at 9 (explaining the statutory scheme).  SBA defined the "traditional investment company" as "a professionally managed firm organized exclusively to pool capital from more than one source for the purpose of investing in businesses that are expected to generate substantial returns to the firm's investors."  *Id.*

[3] Namely, "ELK asserted that SBA had violated the APA by failing to approve either of the proposed transactions, which SBA knew would result in ELK being unable to raise the capital necessary to avoid liquidation.  ELK alleged that SBA's decision to deny approval of the investment transactions violated its own regulations and Standard Operating Procedures, and the motive behind the denial was not legitimate, but rather, based on SBA's desire to drive all SBICs organized as a perpetual-life corporation[], including ELK, out of business."  ECF No. 10 ¶ 43.

> SBA . . . hereby releases and forever discharges ELK . . . from any and all actions, causes of action, claims, rights, and demands of every kind and nature, in law or equity, whether known or unknown, suspected or unsuspected, which the SBA Releasors now have, may have or has ever had against any Elk Releasee, from the beginning of the world to the Effective Date.

ECF No. 10-1 at 3-4 ¶ 6. Similarly:

> ELK . . . hereby releases and forever discharges SBA, its officials or its present or former employees or agents, in their official capacities only (collectively the "SBA Releasees") from any and all actions, causes of action, claims, rights, and demands of every kind and nature, in law or equity, whether known or unknown, suspected or unsuspected, which the SBA Releasors now have, may have or has ever had against any Elk Releasee, from the beginning of the world to the Effective Date.

ECF No. 10-1 at 4-5 ¶ 8. There is no explicit release by ELK of claims it had against its officers or directors.

The settlement agreement also required ELK to consent to a receivership if ELK failed to pay the SBA under the agreement. ECF No. 10-1 at 3 ¶ 4 ("ELK shall execute a Consent Order of Receivership, attached hereto as Exhibit B"). The Consent Order of Receivership (the "Consent Order"), which Feinsod signed on behalf of ELK, expressly provided that the SBA[4] would serve as ELK's receiver if ELK failed to pay the SBA. ECF No. 10-2 at 1 ¶ 1. The Consent Order authorized the Receiver "to pursue and preserve all of [ELK's] claims," without any exception for claims against ELK's former officers. ECF No. 10-2 at 1-2 ¶ 2. The order anticipated claims against "ELK's present or past officers, directors, managers, or principals," without any exception for suits by the Receiver against former officers, and specifically authorized the Receiver "to utilize SBA personnel, and to employ such other personnel as it may deem necessary to effectuate the operation of the receivership." ECF No. 10-2 at 4-5 ¶¶ 6-10.

### C.     The receivership.

After executing the settlement agreement and Consent Order, ELK surrendered its license. ELK also managed to make an initial payment to the SBA but failed to pay the full $7.9 million required by the settlement agreement. ECF No. 10 ¶ 70. In February 2013, the SBA filed a complaint in the United States District Court for the Southern District of New York seeking the appointment of a receiver. ECF No. 10 ¶¶ 71–72; *see* Complaint, *SBA v. Elk Assocs. Funding Corp.*, No. 13-cv-1326 (E.D.N.Y. Feb. 14, 2013), ECF No. 1. On stipulation, the case

---

[4] Congress gave the SBA the authority to act as receiver in cases like this one: "The Administration shall have authority to act as trustee or receiver of the licensee. Upon request by the Administration, the court may appoint the Administration to act in such capacity unless the court deems such appointment inequitable or otherwise inappropriate by reason of the special circumstances involved." 15 U.S.C. § 687c(c).

4

was transferred to the Eastern District of New York on March 13, 2013.  Stipulation to Transfer Venue, *SBA v. Elk Assocs. Funding Corp.*, No. 13-cv-1326 (E.D.N.Y. Mar. 7, 2013), ECF No. 4.

On April 24, 2013, the Eastern District of New York entered the Receivership Consent Order.  In that order, the court appointed SBA as the permanent liquidating receiver for ELK, holding that "ELK has violated the [Small Business Investment] Act and the Regulations as alleged in the Complaint" and entering judgment against ELK in the amount of $21,175,000.  ECF No. 10-2 at 5-6 ¶¶ 12–13.  The court took "exclusive jurisdiction of ELK and all of its assets," appointed the Receiver for the "purpose of marshaling and liquidating all of ELK's assets," and granted the Receiver "all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers, or principals of ELK under applicable state and federal law, by the Articles of Incorporation . . . of said limited corporation, in addition to all powers and authority of a receiver at equity, and all powers and authority conferred upon the Receiver by the provisions of 15 U.S.C. § 687c and 28 U.S.C. § 754."  ECF No. 10-2 at 1-2 ¶¶ 1-2.

### D.     The Receiver's litigation against Feinsod.

The Receiver's investigation determined that $12 million of debt incurred by ELK "was authorized and approved by Elk's former officers and directors in violation of their fiduciary duties to Elk."  *SBA v. Elk Assocs. Funding Corp.*, No. 13-cv-1326, 2020 WL 6581948, at *2 (E.D.N.Y. Nov. 10, 2020).  ELK's managers had transferred over $12 million to AmeriTrans for "management expenses" and "AmeriTrans debt to third parties," though "recovery of the funds advanced was unlikely."  Memorandum in Support of Motion to Lift Judicial Stay for a Limited Purpose, *SBA v. Elk Assocs. Funding Corp.*, No. 13-cv-1326 (E.D.N.Y. Nov. 17, 2016), ECF No. 81-1.  AmeriTrans had not operated at a profit "in recent years" and "anticipated incurring a loss in fiscal year 2011 [and 2012]."  *Id.* at 3-4.

In the Receivership Consent Order, the court had also stayed all civil actions involving "ELK's present or past officers, directors, managers, or principals to the extent said civil legal proceedings involve any action taken by them while acting in their official capacity with ELK."  ECF No. 10-2 at 4-5 ¶ 8.  In November 2016, the Receiver moved to lift the stay for the limited purpose of allowing "the Receiver to commence and pursue a civil action for (1) breach of fiduciary duty, (2) waste of corporate assets, (3) aiding and abetting a breach of fiduciary duty, (4) negligence and (5) any other applicable civil cause of action against the former officers and directors of Elk."  *Elk Assocs.*, 2020 WL 6581948, at *2.  The district court granted the stay motion, charging the Receiver "with investigating, liquidating, pursuing and preserving all claims and causes of action and assets of Elk," and finding that the proposed action was "reasonable and in the best interests of the Elk Receivership Estate."  Order Partially Lifting the Judicial Stay and Injunction for a Limited Purpose, *SBA v. Elk Assocs. Funding Corp.*, No. 13-cv-1326 (E.D.N.Y. Nov. 21, 2016), ECF No. 82; ECF No. 10 ¶¶ 84–85.  Both the motion and the court's order lifting the stay went unopposed.  *See Elk Assocs.*, 2020 WL 6581948, at *2.

Now cleared to sue, the Receiver filed a complaint in June 2017 against ELK's former officers and directors, including Feinsod, for breach of fiduciary duty, *ultra vires* acts, waste of corporate assets, conversion, negligence, aiding and abetting a breach of fiduciary duty, civil conspiracy, and gross negligence ("the Receiver Action").  *See Elk Assocs.*, 2020 WL 6581948,

at *2; ECF No. 10 ¶ 86. Feinsod, with other defendants, moved to dismiss the Receiver's complaint, arguing the SBA's release of claims in the settlement agreement barred the claims. Memorandum of Law in Support of Defendants' Omnibus Motion to Dismiss, *SBA as Receiver of Elk Assocs. Funding Corp. v. Feinsod*, No. 2:17-cv-03586 (E.D.N.Y. Oct. 6, 2017), ECF No. 47-1. The motion maintained that the SBA was seeking "to vindicate its authority as an agency," rather than ELK's rights, and that the settlement agreement release any and all claims the SBA may have. *Id.* at 25. The district court denied the motion to dismiss, finding that "because the SBA is bringing this action in its role as receiver for Elk, the terms and conditions of the settlement agreement do not apply." *SBA as Receiver of Elk Assocs. Funding Corp. v. Feinsod*, 347 F. Supp. 3d 147, 161 n.11 (E.D.N.Y. 2018). The district court granted the motion on the aiding and abetting breach of fiduciary duty and conspiracy claims, and denied the motions in all other respects, holding that "the SBA may pursue this action . . . as receiver for Elk." *Id.* at 161.

### E. Feinsod's litigation in this court.

Believing the Receiver Action breached the settlement agreement, Feinsod moved to lift the stay in October 2019 so he could file an action against the SBA. ECF No. 10 ¶ 91. The district court denied the motion after applying the factors in *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) for lifting a receivership stay.[5] *Elk Assocs.*, 2020 WL 6581948 at *6. The district court distinguished ELK's claims through the Receiver from the claims of ELK's creditors, holding that the Receiver had "alleged injuries *that are distinct from the injuries suffered by the creditors*." *Elk Assocs.*, 2020 WL 6581948 at *6 (emphasis in original) (quoting Receiver Action Order, 347 F.Supp.3d at 160–61, 161 n.10). Accordingly, the court "held that the Receiver may pursue its claim for breach of fiduciary duty, among others, *not as a creditor*, but rather *as receiver for Elk*." *Id.*

In September 2022, Feinsod renewed his motion to lift the stay because the statute of limitations would run in less than two months. This time, the district court granted the motion to lift the stay. Letter, *SBA v. Elk Assocs. Funding Corp.*, No. 13-cv-1326 (E.D.N.Y. Sept. 21, 2022), ECF No. 118; Electronic Order, *SBA as Receiver of Elk Assocs. Funding Corp. v. Feinsod*, No. 2:17-cv-03586 (E.D.N.Y. Oct. 24, 2022). In lifting the stay, the district court based its ruling not on "the merit of the moving party's underlying claim" but on the other two *Wencke* factors, including the potential harm to Feinsod if the statute of limitations for claims in this court expired, for deciding whether to lift a receivership stay. Electronic Order, *SBA as Receiver of Elk Assocs. Funding Corp. v. Feinsod*, No. 2:17-cv-03586 (E.D.N.Y. Oct. 24, 2022). At the same time, Feinsod sought to defer summary judgment briefing in the Receiver's case against him until "disposition of the renewed motion," a request the district court denied. *See* Scheduling Order, *SBA as Receiver for Elk Assocs. Funding Corp. v. Feinsod*, No. 2:17-cv-03586 (E.D.N.Y. Sept. 24, 2022).

---

[5] The *Wencke* factors are: (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim. *Elk Assocs.*, 2020 WL 6581948, at *6. The district court found the first and third factors weighed against lifting the stay, and the second was neutral. *Id.* at *4, *6.

6

Feinsod first filed a complaint in this court in November 2022, and the Government moved to dismiss for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. Feinsod then amended the complaint pursuant to Rule 15(a)(1)(B). ECF No. 10. In his amended complaint, he alleges breach of contract and fraud in the inducement, both regarding the settlement agreement's release provisions. *Id.* Feinsod also claims that the Receiver Action breached the release in the settlement agreement (Count I), and that ELK was fraudulently induced to enter the settlement agreement because SBA was aware ELK wanted a broad release that would bar claims by a Receiver. (Count II). ECF No. 10. Feinsod repeatedly asserts that the Receiver acted as an agent of the SBA. ECF No. 10 ¶¶ 1, 13, 14, 15, 16, 72, 73, 74, 87, 90.

The Government moved to dismiss both counts of the amended complaint. It seeks to dismiss the breach of contract claim for failure to state a claim and the fraud claim for lack of subject-matter jurisdiction. In the alternative, to stay the case until judgment in the Receiver's action against Feinsod in the Eastern District of New York becomes final. ECF No. 11.

## II.    DISCUSSION

The court considers first whether to stay these proceedings until the resolution of the Receiver Action against Feinsod in district court. The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *UnionBanCal Corp. & Subsidiaries v. United States*, 93 Fed. Cl. 166, 167 (2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). When deciding whether to stay a proceeding, "'a court has broad discretion to stay proceedings before it.'" *UnionBanCal Corp. & Subsidiaries v. United States*, 93 Fed. Cl. 166, 167 (2010) (quoting *Coast Fed. Bank v. United States*, 49 Fed. Cl. 11, 15 (2001)). The Government, as the proponent of a stay, bears the burden of establishing that the stay is appropriate. *See Clinton v. Jones*, 520 U.S. 681, 708 (1991). A stay "is appropriate if it will avoid conflicting opinions and promote judicial efficiency, while at the same time it does not unduly prejudice a party's interest." *N.Y. Power Auth. v. United States*, 42 Fed. Cl. 795, 799 (1999) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1360 (2d ed. 1990)). "[T]he stay of a court proceeding pending a district court decision generally depends on the threat of inconsistent decisions." *Northrop Corp. v. United States*, 27 Fed. Cl. 795, 802 (1993).

The Government seeks to stay this proceeding until the Receiver Action becomes final. Judicial efficiency weighs heavily in favor of staying this action. As an initial matter, "the most appropriate forum for determining the validity of the receiver's action is surely the court that appointed him." *Levin v. Ruby Trading Corp.*, 333 F.2d 592, 595 (2d Cir. 1964). In this case, the Eastern District has considered and rejected Feinsod's contention that the Receiver Action violates the settlement agreement because the receiver is asserting ELK's claims, which were not released by anyone. *SBA as Receiver of Elk Assocs. Funding Corp. v. Feinsod*, 347 F. Supp. 3d 147, 161 n.11 (E.D.N.Y. 2018). Rather than litigate that decision to completion (through appeals as necessary), Feinsod asks this court to hold that the Receiver Action violates the settlement agreement. But if the Second Circuit affirms the district court, the conclusion that the settlement agreement does not apply to the Receiver Action may well become binding on this court under the normal rules of claim preclusion (an issue this court cannot definitively resolve today).

The Government relies heavily upon its contention that claim preclusion would, once the Receiver Action becomes final, likely limit or eliminate Feinsod's ability to argue breach of the settlement agreement or fraud in the inducement in this court.  The parties expend significant effort arguing about the application of claim preclusion to the facts presented here—specifically whether the same parties are litigants in the Receiver Action.  But that does not provide the sole focus of the court's inquiry in this case.  Given the facts of this case, the question the court will likely need to address will be whether "defendant preclusion" applies.  Under defendant preclusion, "[a] defendant [in a prior action] is precluded only if (1) the claim or defense asserted in the second action was a compulsory counterclaim that the defendant failed to assert in the first action, or (2) the claim or defense represents what is essentially a collateral attack on the first judgment."  *Nasalok*, 522 F.3d at 1323 (citing Restatement (Second) of Judgments § 18(2); § 22(2)).  A claim or defense is precluded as a collateral attack if "successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."  Restatement (Second) of Judgments § 22(2)(b).  The essence of defendant preclusion is that a collateral attack—"[a]n attack on a judgment in a proceeding other than a direct appeal"— is not the appropriate means to challenge an unfavorable ruling.  *Wall v. Kholi*, 562 U.S. 545 (2011).  Rather, "'[t]he proper course for a dissatisfied litigant to redress legal errors is through appeal, not by collateral attack on the judgment in a separate lawsuit.'"  *Perry v. United States*, 548 F. App'x 614, 616 (Fed. Cir. 2013) (quoting *Ullman v. United States*, 64 Fed. Cl. 557, 571 (2005)) (alteration in original).

Here, the potential for preclusive effect from a final judgment in the Receiver Action cautions against continued proceedings in this court until the Receiver Action is final.  The district court already concluded "that 'the terms and conditions of the settlement agreement do not apply'" to the Receiver Action, which is an action against Feinsod "'in its role as receiver for Elk.'"  ECF No. 11 (quoting *Feinsod*, 347 F. Supp. 3d at 161 n.11 (emphasis added)).  If the Receiver Action results in a judgment for the Receiver, then the district court's determination that the Receiver Action does not implicate the settlement agreement may well become binding on this court.  Given that the Receiver Action is much further along that this case (cross motions for summary judgment are fully briefed), judicial economy weighs in favor of staying this action.  And, according to the docket of the Receiver Action, the parties are in settlement conferences with the district court and may settle their dispute, as many other defendants have done already.  In other words, moving forward now with litigation that appears to be a collateral attack on the district court's determination that the settlement agreement is not implicated by the Receiver Action may well turn out to be wasted effort.  *See Farmer*, 132 Fed. Cl. at 345 (staying proceedings until resolution of a related appeal because "given the symmetry of issues involved, the court agrees with defendant that a stay will serve the valuable purpose of preserving the resources of both the parties and the court").

None of Feinsod's arguments to the contrary merit denying the stay.[6]  First, Feinsod argues the Government has not met its burden to show a stay is appropriate, by failing to "make out a clear case of hardship or inequity in being required to go forward," as it must "if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else."

---

[6] Because the court is not granting the stay on comity grounds, the court does not address those arguments.

*C3, Inc. v. United States*, 4 Cl. Ct. 790, 791 (1984) (quoting *Landis*, 299 U.S. at 255). But as discussed above, the court concludes that the conservation of judicial resources justifies the stay. And there is no hardship to Feinsod from the stay. By staying this case, Feinsod will not face any risk of the statute of limitations barring his claims. And his arguments that he will be prejudiced strongly suggest that this case is, in effect, a collateral attack on the district court's holding that the Receiver Action does not violate the settlement agreement. According to Feinsod, his hardship is that he has had to, and will continue to have to, defend against the Receiver Action. *E.g.*, ECF No. 13 at 40. It's hard to imagine a clearer example of a collateral attack on the district court's decision than that (although that is a question for another day). Of course, if having to defend litigation in the Receiver Action is harm, denying a stay here would *increase* Feinsod's harm by forcing him to incur the cost of litigating in two courts at once even though the efforts in this court may be wasted.

Second, Feinsod argues that the Government is requesting an indefinite stay without establishing the need for such a stay. An indefinite stay is one in which there is no set ending date, and to justify one the movant needs to show a "pressing need." *E.g.*, *Beberman v. United States*, No. 17-179, 2020 WL 1638424, at * 3 (Fed. Cl. Apr. 2, 2020) ("The proponent of a stay . . . is only required to demonstrate a pressing need when the proposed stay is indefinite in nature."); *Smith v. United States*, 13-161, 2013 WL 5315694, at *1 (Fed. Cl. Sept. 20, 2013) ("[T]he 'pressing need' standard is limited to the circumstance in which a party objects to a stay of proceedings of an indefinite duration."). But "[t]he fact that the court cannot predict the exact date on which [another court] will issue its opinions does not mean the term of the stay is undefined." *Farmer*, 132 Fed. Cl. at 345. Rather, when the stay is until the resolution of a related action and a party "has some control over the second proceeding and there will be a finite time period for its resolution," the stay is not indefinite. *In re Sacramento Mun. Util. Dist.*, 395 F. App'x 684, 688 (Fed. Cir. 2010). Here, Feinsod is a party to the Receiver Action and has "some control" over the timing in that case such that this is not an indefinite stay.

Finally, Feinsod contends that "no threat of inconsistent judgments [is] presently before this Court because whether and to what extent SBA breached the Settlement Agreement through the Receiver as its agent was not previously raised, meaning the likelihood that this issue will be fully adjudicated in the Receiver Action is slim to none." ECF No. 13 at 13-14. But Feinsod did raise the argument about the settlement agreement to the district court and lost. *See Feinsod*, 347 F. Supp. 3d at 161 n.11. Thus, the court does not agree that there is no threat of inconsistent judgments given that the claims here may well amount to collateral attacks on the Receiver Action. To move forward, this court would have to conclude that the SBA is not acting as the receiver as the district court found, but as the agent of the SBA. *Feinsod*, 347 F. Supp. 3d at 161 n.11.

For the forgoing reasons, the court hereby:

1. Grants-in-part the Government's motion to dismiss or in the alternative to stay this case, ECF No. 11, insofar as it seeks to stay this action;

2. Stays this case until judgment in the Receiver Action, *United States Small Bus. Admin. v. Feinsod*, No. 13-1326-LAW (E.D.N.Y. 2017), becomes final; and

3.  Orders the parties to confer and file a joint status report within 30 days after the Receiver Action judgment becomes final (or the parties settle that action) advising this court of the need for further proceedings in this case.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge
